# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Oneida Tribe of Indians of Wisconsin,
                                    Plaintiff,


v.                                                    Case File No.



Village of Hobart, Wisconsin,
                                    Defendant.


## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF


Plaintiff Oneida Tribe of Indians of Wisconsin (the "Tribe"), by and through its undersigned counsel, states and alleges as follows:

### NATURE OF THE ACTION

1.      The Tribe brings this action for declaratory and injunctive relief under 28 U.S.C. §2201 and Fed. R. Civ. Proc. 65 against the Village of Hobart, Wisconsin ("Village" or "Hobart") for a declaration of the parties' legal rights with regard to the status of lands held in trust for the Tribe by the United States and located within the Village (the "trust lands"); the United States holds title to and the Tribe is the beneficial owner of these trust lands. Specifically, the Tribe seeks a declaration that the trust lands are not subject to the "fee" imposed by the Village Stormwater Management Utility, Village of Hobart Code of Ordinances, ch. 4.5, and an injunction against attempts by the Village to impose and collect such charges against the Tribe's trust lands.

## JURISDICTION

2. The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362. The Tribe maintains a government-to-government relationship with the United States and has a governing body duly recognized by the Secretary of the Interior. 74 Fed. Reg. No. 153, at 40220, August 11, 2009. The Tribe asserts claims arising under the Constitution, laws and treaties of the United States, including but not limited to Art. I, §8, cl. 3, Art. II, §2, cl. 2, and Art. VI of the United States Constitution; the Treaty with the Oneidas, February 3, 1838, 7 Stat. 566; the Indian Reorganization Act of 1934, 25 U.S.C. §461 *et seq.*; and the federal common law.

## VENUE

3. Venue is proper in this district under 28 U.S.C. §1391(b) inasmuch as the Tribe's trust lands and the Village of Hobart are located within the district and the events giving rise to the claims made by the Tribe occurred within the district.

## PARTIES

4. Plaintiff Tribe is a successor in interest to the Oneida Nation recognized by the United States in the Treaty of Fort Stanwix, Oct. 22, 1784, 7 Stat. 15, the Treaty of Fort Harmar, Jan. 9, 1789, 7 Stat. 33, and the Treaty of Canandaigua, Nov. 11, 1794, 7 Stat. 44. The Tribe has continuously since 1794 received or been entitled to receive annuity payments under the Treaty of Canandaigua. The Tribe is organized pursuant to a constitution adopted under the Indian Reorganization Act of 1934, 25 U.S.C. §476, and approved by the Secretary of the Interior on December 21, 1936. The Tribe's principal government offices are located at N7210 Seminary Road, Oneida, Wisconsin 54155.

5. Defendant Village of Hobart is an incorporated municipality in Brown County,

State of Wisconsin.  Its principal offices are located at 2990 South Pine Tree Road, Oneida, Wisconsin 54155.

## ALLEGATIONS COMMON TO ALL CLAIMS

6.     On February 3, 1838, the United States executed a treaty with the First Christian and Orchard Parties of the Oneidas to set aside a tract of recently ceded Menominee territory for the Oneidas. 7 Stat. 566.  Under Article 2 of the treaty, the reserved land was a tract "to be held as other Indian lands are held..." containing approximately 65,400 acres ("Oneida Reservation"). *Id.*  The First Christian and Orchard Parties are now organized as the Oneida Tribe of Indians of Wisconsin pursuant to the Indian Reorganization Act.

7.     On June 18, 1934, Congress enacted the Indian Reorganization Act (the "IRA"), which, among other things, authorizes the Secretary of the Interior to take lands into trust for tribes.  48 Stat. 984, codified as amended at 25 U.S.C. §461, *et seq.*  As authorized by the IRA and in accordance with governing regulations, the Tribe has from time to time since 1934 applied for certain lands to be placed into trust by the United States for the benefit of Tribe.  25 C.F.R. Part 151.

8.     The United States has continuously since 1838 held parcels of land in trust for the Tribe, and the Secretary has from time to time since 1934 acquired parcels of land in trust for the Tribe under the IRA, located within the boundaries of the Village.  As of this date, approximately 1420 acres located within the Village are held in trust by the United States for the Tribe.  These trust lands and the immunity of these trust lands from the Village's Stormwater Management Utility "fees" are the subject of this litigation.

9.     In accordance with its Stormwater Utility Management Ordinance (the

"Ordinance"), the Village has since July 2007 imposed a "fee" upon all property located within the Village for the alleged purpose of managing stormwater run-off. *Village of Hobart Code of Ordinances,* §§4.501 Findings, 4.508 Billing and Penalties. The Ordinance creates a Storm Water Management Utility to assess and impose these "fees" on all real property located in the Village, including a base charge and an Equivalent Runoff Unit Charge. *Id.,* §4.505(4) Rates and Charges.

10.     The charges imposed by the Ordinance are not fees for services rendered by the Village. Rather, the charges "apply to each and every lot or parcel within the Village." *Id.,* §4.505(1). The charges are the responsibility of every property owner in the Village and unpaid charges under the Ordinance "shall be a lien upon the property served." *Id.,* §4.508(3) Billing and Penalties. The Ordinance further provides that, "The Village shall collect delinquent charges under Wis. Stat. §§ 66.0821(4) and 66.0809(3)." *Id.*

11.     Wis. Stat. 66.0809(3) authorizes the imposition of penalties for failure to pay the charges and provides that "arrears and penalty will be levied as a tax against the lot or parcel of real estate…" The statute further authorizes the use of the same proceedings "in relation to the collection of general property taxes and to the return and sale of property for delinquent taxes..." Wis. Stat. §66.0809(3).

12.     Beginning in July 2007, the Village purported to impose the charges levied under the Ordinance on the Tribe's trust land and fee land in the amount of $70,462.80. By letter dated January 31, 2008, and signed by Chairman Danforth, the Tribe advised the Village that it considered the charges imposed on its trust and fee land to be invalid under federal law and declined to pay the same in the amount of $70,462.80. Letter attached as Exhibit A.

13.     In December 2008, the Village once again purported to impose the charges under

the Ordinance on the Tribe's trust and fee land.  By letter dated January 14, 2009, and signed by Chairman Hill, the Tribe paid under protest the charges as against its fee land in the amount of $37,748.59, and the Tribe declined again to pay the charges under the Ordinance as to the trust land.  Letter attached as Exhibit B.

14.     On March 25, 2009, the Tribe and the Village executed an Escrow Agreement; the Oneida Golf Enterprise Corporation ("OEGC"), a tribally chartered corporation wholly owned by the Tribe and charged with the management of the Tribe's Thornberry Creek Golf Course trust property, also signed the Escrow Agreement.  The purpose of the Escrow Agreement was to obtain the approval by the Village of liquor license applications for OEGC for the Golf Course property, which approval was conditioned by the Village on the payment by the Tribe into escrow of the disputed, outstanding charges under the Ordinance with respect to the Tribe's trust land located within the Village.

15.     The Escrow Agreement required the Tribe to deposit the disputed charges under the Ordinance in the amount of $106,816.95 into escrow, upon which payment the Village approved the Tribe's pending liquor license applications.  The Escrow Agreement further provided for a ninety (90) day period during which time the parties may attempt a negotiated resolution of the disputed charges under the Ordinance.  Finally, the Escrow Agreement provided that, in the event no agreement was reach at the end of the ninety (90) day period, each party waived its sovereign and/or governmental immunity for the limited purpose of contesting the Village's authority to impose its charges under the Ordinance on the Tribe's trust land.  Both parties consented to suit in federal district court regarding the dispute.  Escrow Agreement attached as Exhibit C.

16.     Following the execution of the Escrow Agreement, representatives of the Tribe

and the Village did meet for the purpose of addressing the disputes between the Tribe and the Village with respect to the Village's claims of authority and jurisdiction over the Tribe's trust lands. No agreement has been reached.

17. On March 27, 2009, the Tribe received by certified mail a letter dated March 24, 2009, from the Midwest Regional Office, BIA, regarding the imposition of the charges under the Ordinance on the Tribe's trust land. The letter advised the Tribe and the Village that the charges constituted a tax that may not be imposed on land held in trust by the United States. Regional Director Virden requested the Village to immediately delete the Tribe's trust land from the tax certificate and terminate further collection action. Letter attached as Exhibit D.

18. On December 15, 2009, the Tribe received the 2009 annual tax bills for its fee and trust land. The bills include amounts levied by the Village for the charges under the Ordinance for the Tribe's trust land in the aggregate amount of $42,156.00, notwithstanding direction to the contrary from the BIA.

19. The Tribe has promulgated ordinances that comprehensively regulate water quality on the Oneida Reservation, including stormwater run-off on its trust land. These ordinances include Chapter 69 of the Oneida Code of Laws, the Zoning and Shoreland Protection Law, adopted in 1981 to prevent surface water run-off into creeks and wetlands; Chapter 46 of the Oneida Code of Laws, the On-Site Waste Disposal Ordinance, adopted in 1988 to regulate private sewage systems; Chapter 47 of the Oneida Code of Laws, the Sanitation Ordinance, adopted in 1990 to regulate water and sanitary utilities; Chapter 43 of the Oneida Code of Laws, the Well Abandonment Law, adopted in 1994 to require the abandonment or upgrade of unused, unsafe, or noncomplying wells; Chapter 48 of the Oneida Code of Laws, the Water Resources Ordinance, adopted in 1996 to regulate present and potential sources of water pollution; and

Chapter 41 of the Oneida Code of Laws, the Non-Metallic Mining Ordinance, adopted in 2007 to regulate reclamation projects for the purpose of meeting water quality standards for surface waters and wetlands.

20.     The Tribe has an Environmental, Health & Safety Division (the "Division") which is tasked with implementation and enforcement of the Tribe's environmental laws and programs. The Division has an annual budget of approximately $3.7 million. Within the Division, seven staff members are assigned to the Water Resources Team, which is responsible for carrying out the Tribe's water quality programs. The Tribe expends approximately $800,000 annually for water quality programs which are directly or indirectly related to mitigating the effects of stormwater run-off. Specific activities include restoring and enhancing meanders to streams and creeks to slow the flow of water, restoring and enhancing wetlands to provide for filtration of stormwater, establishing buffer zones between agricultural fields and waterways, planting cover vegetation to control erosion, investigation of and response to spills, water quality monitoring for both point and non-point sources of pollution, construction site erosion control, and community education regarding best practices to reduce pollution to waterways and improve water quality. In addition to these efforts, the Tribe installs and maintains on-site stormwater treatment facilities on tribal properties, including water infiltration systems and retention ponds.

21.     The Tribe has entered into a Direct Implementation Tribal Cooperative Agreement with the United States Environment Protection Agency (the "EPA") for the control of stormwater runoff from construction sites, and employees of the Tribe have received federal credentials with respect to construction site permitting and investigation under the Clean Water Act and related regulations. In addition, the Tribe has applied for and expects to receive a Municipal Separate Stormwater Sewer Permit from the EPA for the entire Oneida Reservation.

22. The Tribe's trust land is subject to comprehensive federal statutes and regulations regarding the use and management of the land, the leasing and use of resources thereon, and the quality of water sources thereon, including stormwater run-off. These federal statutes include, but are not limited to, the Indian Trade and Intercourse Act, 25 U.S.C. §177, 25 U.S.C. §321 *et seq.* (regarding rights-of-way over Indian land, including trust land), 25 U.S.C. §391 *et seq.* (regarding the lease or sale of tribal lands, including trust land, for any use including timber, mineral and other resource development and protection), the American Indian Agricultural Resources Management Act, 25 U.S.C. §3701 *et seq.* (regarding management and development of tribal agricultural lands, including trust land), and the Clean Water Act, 33 U.S.C. §1251 *et seq.,* and regulations promulgated thereunder.

23. By the terms of the 2009 Escrow Agreement, the Village consents to this action to challenge its authority to impose the charge under the Ordinance on the Tribe's trust land and waives its claims to sovereign and/or governmental immunity. No other action has been filed in this court.

## FIRST CLAIM FOR RELIEF

### (Claim under the IRA and implementing regulations)

24. The Tribe repeats and incorporates by reference herein the allegations in paragraphs 1 through 23.

25. The IRA, 25 U.S.C. §465, authorizes the Secretary of the Interior to place land into trust to be held by the United States for the benefit of Indian tribes. Such lands "shall be exempt from State and local taxation." *Id.*

26. Regulations promulgated by the Secretary of the Interior prohibit local regulation

and taxation of trust lands. 25 C.F.R. §1.4.

27.     The United States holds title to land within the Village in trust for the Tribe. This is the trust land that is the subject of this action.

28.     The charges authorized and imposed by the Village under the Stormwater Management Utility Ordinance constitute a tax on the Tribe's trust land and, as such, violate the tax immunity provided for those lands by federal law and regulation.

## SECOND CLAIM FOR RELIEF

### (Federal pre-emption)

29.     The Tribe repeats and incorporates by reference herein the allegations in paragraphs 1 through 23.

30.     Under federal common law and rules governing construction of Indian statutes, federal law pre-empts the application of state and local law and regulation to recognized Indian tribes and their property located in Indian country, 18 U.S.C. §1151, when federal regulation is comprehensive.

31.     Federal regulation of the Tribe's trust property is comprehensive and pervasive and precludes state and local regulation by virtue of the Supremacy Clause of the United States Constitution. U.S. Const., Art. VI, §2.

32.     Whether or not they constitute a tax, the charges that the Village attempts to impose under its Stormwater Management Utility Ordinance on the Tribe's trust land are pre-empted by the pervasive and comprehensive federal regulation of the Tribe's trust land.

## THIRD CLAIM FOR RELIEF

### (Infringement of tribal self-government)

33.     The Tribe repeats and incorporates by reference herein the allegations in paragraphs 1 through 23.

34.     The Tribe holds inherent powers of self-government, including the authority to manage and regulate the Oneida Reservation and tribal property, including tribal trust land.

35.     In the exercise of its inherent power of self-government, the Tribe has promulgated tribal law to manage the water resources on the Oneida Reservation, including stormwater run-off on trust lands.

36.     The Tribe's interests in the regulation of its trust land, including stormwater run-off, far outweigh any interest the Village has in regulating the same land for the same purpose.

37.     It is overriding federal policy and law to protect the Tribe's inherent power of self-government.  The federal interests in encouraging tribal self-sufficiency and economic development with particular reference to the Tribe's trust lands far outweigh any interest the Village has in regulating the Tribe's trust land.

38.     Whether or not it constitutes a tax, the charges that the Village attempts to impose under its Stormwater Management Utility Ordinance on the Tribe's trust land violate the Tribe's inherent powers of self-government.


## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

1.     A declaration that the Tribe's trust land is immune from the Village's Stormwater Management Utility Ordinance and the Village lacks authority to impose charges under the

Ordinance on the Tribe's trust land directly or otherwise;

2.       An injunction against the Village's attempts to impose and any effort to collect charges under its Stormwater Management Utility Ordinance on the Tribe's trust land;

3.       Attorneys' fees and costs of the action; and

4.       All relief available, at law or in equity, to enforce the rights of the Tribe as alleged in this complaint, and such other and further relief, both special and general, at law or in equity, as the Court may deem just and proper.


Arlinda F. Locklear
Bar No. 962845
4113 Jenifer Street, NW
Washington, D.C. 20015
(202) 237-0933
alockesq@comcast.net


James R. Bittorf, Deputy Chief Counsel
Bar No. 1011794
jbittorf@oneidanation.org
Rebecca M. Webster, Senior Staff Attorney
Bar No. 1046199
bwebster@oneidanation.org
Oneida Law Office
Post Office Box 365
Oneida, Wisconsin 54155

Dated: February _19_, 2010

# Exhibit A



Oneidas bringing several hundred bags of corn to Washington's starving army at Valley Forge, after the colonists had consistently refused to aid them.

# *Oneida Tribe of Indians of Wisconsin*
## BUSINESS COMMITTEE



UGWA DEMOLUM YATEHE Because of the help of this Oneida Chief in cementing a friendship between the six nations and the colony of Pennsylvania, a new nation, the United States was made possible.

**P.O. Box 365 • Oneida, WI 54155**
**Telephone: 920-869-4364 • Fax: 920-869-4040**

January 31, 2008

HAND DELIVERED

Kerry M. Blaney, Treasurer
Brown County
P.O. Box 23600
Green Bay, WI 54301

Richard Heidel, President
Village of Hobart
2990 S. Pine Tree Road
Oneida, WI 54155

RE:  Hobart Storm water Assessments
O'Hare Special Assessments

Dear Mr. Blaney and Mr. Heidel:

The Oneida Tribe received 2007 tax bills from Brown County which include assessments for storm water management for tribal fee and tribal trust property located within the Village of Hobart in the aggregate amount of $70,462.80. The Tribe will not pay the assessments because they are not permitted under federal law. We would like to meet with you to discuss this issue in order to reach am amicable resolution.

The 2007 tax bills also include special assessments for road construction and water and sewer improvements for the proposed extension of O'Hare Blvd in the Village of Hobart for the following tax parcel numbers: (HB-322, HB-324, HB-329, HB-336, HB-339, HB-340-1) in the amount of $28,742.32. The Tribe will not pay the special assessments on the basis that they are invalid as a matter of federal and state law for the reasons stated in the Tribe's complaint filed in the United States District Court for the Eastern District of Wisconsin in <u>Oneida Tribe of Indians of Wisconsin v. Village of Hobart, Wisconsin</u>, Civil File No. 06-C-1302.

Enclosed is a check in the amount of $138,729.89 representing payment of the first half of the general property tax for the tribal fee property at issue.

Sincerely,

Gerald L. Danforth
Oneida Tribal Chairman

cc:     Terrence Virden, Bureau of Indian Affairs, Midwest Regional Director
         Oneida Business Committee
         Bill Gollnick, Chief of Staff
         Jo Anne House, Chief Counsel
         Fred Muscavitch, Land Management Director

# Exhibit B



Oneidas bringing several
hundred bags of corn to
Washington's starving army
at Valley Forge, after the
colonists had consistently
refused to aid them.

# Oneida Tribe of Indians of Wisconsin
## BUSINESS COMMITTEE



**P.O. Box 365 • Oneida, WI 54155**
**Telephone: 920-869-4364 • Fax: 920-869-4040**



UGWA DEMOLUM YATEHE
Because of the help of
this Oneida Chief in
cementing a friendship
between the six nations
and the colony of
Pennsylvania, a new
nation, the United States
was made possible.

January 14, 2009                                        HAND DELIVERED

Kerry M. Blaney, Treasurer
Brown County
P.O. Box 23600
Green Bay, WI 54301

Richard Heidel, President
Village of Hobart
2990 S. Pine Tree Road
Oneida, WI 54155

RE:    Hobart Storm Water Assessments

Dear Mr. Blaney and Mr. Heidel:

The Oneida Tribe received 2008 tax bills which include current storm water management fees
for tribal fee land located within the Village of Hobart in the amount of $14,832.00. Including
last year's past due assessments and penalties, the current, aggregate amount of storm water
management fees assessed against tribal fee land is $34,427.07. The Tribe is paying these fees
and penalties under protest. It does not appear that the Village has used storm water assessments
to fund improvements which specially benefit tribal fee land, and the Village therefore should
not impose such assessments.

The Tribe will not pay storm water assessments levied against tribal trust land as such
assessments are precluded by federal law.

Enclosed is a check in the amount of $34,427.07 representing payment for storm water fees
levied against tribal fee properties. The tax parcel numbers for these properties are also enclosed
for your reference.

Sincerely,

Richard G. Hill, Chairman
Oneida Tribe of Indians of Wisconsin

cc:    Terrence Virden, Bureau of Indian Affairs, Midwest Regional Director
        Oneida Business Committee
        Bill Gollnick, Chief of Staff
        Jo Anne House, Chief Counsel
        Fred Muscavitch, Land Management Director

# Exhibit C

# ESCROW AGREEMENT

**THIS AGREEMENT** ("Agreement") is made and entered into this $26\underline{th}$ day of March, 2009, by and between the Oneida Tribe of Indians of Wisconsin (the "Tribe"), the Village of Hobart (the "Village"), (each a "party" and, collectively, the "parties"); Oneida Golf Enterprise Corporation ("OGEC"); and Associated Trust Company, NA (the "Escrow Agent").

**WHEREAS,** the Village has enacted a liquor license ordinance pursuant to which it issues licenses for the sale of fermented malt beverages and intoxicating liquors as authorized by Chapter 125 of the Wisconsin Statutes; and

**WHEREAS,** the Tribe purchased Thornberry Creek Golf Course (the "Golf Course"), which is located within the Village, and pursuant to tribal law formed the Oneida Golf Enterprise Corporation ("OGEC"), a tribally chartered corporation wholly owned by the Tribe, to operate the Golf Course; and

**WHEREAS,** OGEC filed an application (the "Application") with the Village for a Retail Class B fermented malt beverage license and a Retail Class B intoxicating liquor license (each a "Liquor License" and collectively, the "Liquor Licenses") for the sale of alcoholic beverages at the Golf Course; and

**WHEREAS,** the Village Board approved OGEC's Application, but conditioned issuance of the Liquor Licenses on the Tribe's deposit of funds in an amount equal to the SWMUO Charges (as defined below) in an escrow account; and

**WHEREAS,** the Village has enacted a Storm Water Management Utility Ordinance, §4.408 of the Village's ordinances (the "SWMUO"); and

**WHEREAS,** the United States of America holds title to land within the Village in trust for the benefit of the Tribe (the "Trust Property"); and

**WHEREAS,** pursuant to the SWMUO, the Village has imposed charges on the Trust Property in the amount of $106,816.95, inclusive of late fees and penalties, (the "SWMUO Charges"), neither the Untied States of America nor the Tribe has paid the SWMUO Charges, and the Village contends that the Tribe and/or the United States of America are obligated to pay the SWMUO Charges; and

**WHEREAS,** the Village claims it possesses authority to impose the SWMUO Charges, and as a separate matter that it may condition issuance of the Liquor Licenses on payment of the SWMUO Charges, and the Tribe disputes whether the Village possesses such authority; and

**WHEREAS,** the Village has agreed to issue the Liquor Licenses to OGEC if the Tribe agrees to the escrow of funds in accordance with the terms set forth below;

1

**NOW THEREFORE**, in consideration of the mutual covenants and agreements made herein and for good and valuable consideration, the receipt and sufficiency of which are acknowledged by each party and the Escrow Agent, the parties and the Escrow Agent covenant and agree as follows:

## ARTICLE 1 - ESTABLISHMENT OF ESCROW ACCOUNT

**Section 1.1 Escrow Amount.** The Tribe shall transfer to the Escrow Agent the amount of $106,816.95, which shall constitute the Escrow Amount and shall be held in an Escrow Account and administered under this Agreement. Immediately upon establishment of the Escrow Account and deposit of the monies, the Escrow Agent shall notify the Village that the Account has been established and the monies have been deposited (the "Notice of Deposit").

**Section 1.2 Escrow of Escrow Amount.** The Escrow Amount will be held in escrow by the Escrow Agent, as collateral for obligations, if any, of the Tribe or the United States of America to pay the SWMUO Charges, until the Escrow Amount is to be released pursuant to the terms of this Agreement. The Escrow Agent agrees to accept delivery of the Escrow Amount and to hold the Escrow Amount in escrow subject to the terms and conditions of this Agreement. During the term of this Agreement, the Escrow Amount shall be invested in an interest bearing account as set forth in Schedule 1 attached hereto. The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to the investment of the Escrow Amount. All interest shall accrue to the benefit of the Tribe, but shall be considered part of the Escrow Amount and be subject to disbursement in accordance with the terms of this Agreement.

**Section 1.3 Additional Payments to Escrow Account.** Until the Escrow Amount is disbursed in accordance with this Agreement, the Tribe shall on or before January 31 of each year deposit additional monies in the escrow account in an amount equal to the SWMUO Charges imposed by the Village on the Trust Property for the previous calendar year pursuant to the SWMUO, and all such monies shall be added to and be part of the Escrow Amount.

**Section 1.4 Protection of Escrow Fund**. The Escrow Agent shall hold and safeguard the Escrow Amount in accordance with the terms of this Agreement, and not as the property of the Tribe or the Village, and shall disburse the Escrow Amount only in accordance with the terms of this Agreement.

## ARTICLE 2 - LIQUOR LICENSES

**Section 2.1 Issuance by Village**. Within three (3) business days of receipt of the Notice of Deposit, the Village Clerk shall issue the Liquor Licenses to OGEC for the premises described in the Application. In the event the Village Clerk fails to issue the Liquor Licenses within three (3) business days of receipt of the Notice of Deposit, this Agreement shall terminate and the Escrow Agent shall disburse the Escrow Amount to the Tribe. As long as the Tribe deposits monies in

2

the Escrow Account in accordance with Section 1.3 above, the Village will not condition the renewal of the Liquor Licenses on payment of the SWMUO Charges or any future SWMUO Charges on the Trust Property, and the Village will not seek to revoke or suspend a Liquor License on the grounds that the SWMUO Charges or any future SWMUO Charges on the Trust Property have not been paid, unless there is a Decision (as defined below) in favor of the Village with respect to the question of whether the Village has authority to condition issuance of the Liquor Licenses to OGEC on the payment of the SWMUO charges or the question whether the Tribe or the United States of America owes the SWMUO Charges.

## ARTICLE 3 - CLAIMS UPON ESCROW AMOUNT

**Section 3.1 Triggering Events.** The following shall be the events that would give rise to a claim by the Village or the Tribe upon all or part of the Escrow Amount:

a.   Failure of the Village Clerk to issue the Liquor Licenses within three (3) business days of receipt of the Notice of Deposit, in which event the Escrow Amount shall be delivered to the Tribe;

b.   A Decision of a court of competent jurisdiction determining whether the Village possesses authority to impose the SWMUO Charges, in which event the Escrow Amount shall be delivered to the Tribe or the Village in accordance with said Decision;

c.   A Decision of a court of competent jurisdiction determining that the Village may lawfully condition the issuance of liquor licenses to OGEC on the payment of SWMUO charges, regardless of whether or not they are legally owed by any person or entity, in which event the Tribe shall be entitled to delivery of the Escrow Amount; provided, however, that if the Tribe elects to receive the Escrow Amount or if the Tribe does not, within three (3) days of the issuance of a decision by the court, give Notice of its consent to the delivery of the Escrow Amount to the Village, the OGEC shall be deemed to have simultaneously surrendered the Liquor Licenses, and shall immediately discontinue the sale of any alcoholic beverages and thereafter must re-apply for the Liquor Licenses. The Village may in its discretion grant or deny the OGEC's application and in the event of denial of the new application, the Tribe or OGEC may appeal or challenge the denial. Pending the new application and any possible appeal, neither the Tribe nor OGEC will be entitled to the Liquor Licenses and may not seek any injunctive relief. In the event the Tribe does not elect to receive the Escrow Amount and consents to the delivery of the Escrow Amount to the Village, the Village will not attempt to revoke or suspend the Liquor Licenses on the grounds that the SWMUO charges have not been paid.

d.   Approval and execution by the Tribe and the Village of a written agreement terminating this Agreement and directing the delivery of the Escrow Amount.

3

**Section 3.2 "Decision" Defined**. For purposes of Section 3.1, the term "Decision" shall mean a judgment or order which is final and therefore may be appealed, but which has not been appealed within the time permitted by law.

**Section 3.3 Filing of Action**. In the event the Village and the Tribe do not reach an agreement under Section 3.1(d) within ninety (90) days following the execution of this Agreement, either the Village or the Tribe may file an action for declaratory and/or injunctive relief in the United States District Court for the Eastern District of Wisconsin (the "District Court") seeking a Decision. In accordance with the provisions of Article 5 below, the Village and the Tribe consent to the jurisdiction of the District Court.

**Section 3.4 Notice of Claim**. Promptly after a default under Section 3.1(a) or agreement under Section 3.1 (d), or after a Decision contemplated under Sections 3.1(b) or (c) is rendered, the party seeking the release of all or part of the Escrow Amount shall give the other party and the Escrow Agent written notice thereof and the grounds therefor (a "Notice of Claim").

**Section 3.5 Distribution**. Upon receipt by the Escrow Agent of a Notice of Claim, the Escrow Agent shall, subject to the provisions of Article 4, deliver the Escrow Amount, or part thereof, as provided in the Notice of Claim. The delivery shall be effectuated by certified check or wire transfer. For greater certainty, the Escrow Agent shall act in accordance with the delivery instructions set out in each Notice of Claim, subject to the provisions of Article 4.

## ARTICLE 4 - OBJECTIONS

Upon delivery of a Notice of Claim by a party (the claiming party) to the other party and the Escrow Agent, and for a period of fifteen (15) calendar days after such delivery, the Escrow Agent shall make no distribution of the Escrow Amount, or any part thereof, unless the Escrow Agent shall have received written authorization from the other party to make such distribution. After the expiration of such fifteen (15) calendar day period, the Escrow Agent shall make the distribution as provided in the Notice of Claim, unless the other party has in writing objected to the Notice of Claim and such written objection shall have been delivered to the Escrow Agent and to the claiming party prior to the expiration of such fifteen (15) calendar days.

## ARTICLE 5 - LIMITED WAIVER OF IMMUNITY

**Section 5.1 Federal Court.** Each party hereby waives sovereign immunity and/or governmental immunity and consents to suit in the District Court for the following purposes:

a.    Claims by a party for declaratory and/or injunctive relief and the distribution of the Escrow Amount with respect to i) the Village's contention that it possesses authority to impose the SWMUO Charges; ii) the Village's contention that it may lawfully condition the issuance of the Liquor Licenses to OGEC on the payment of the SWMUO Charges.

4

**b.**     Claims by a party for enforcement of all other terms of this Agreement.

**c.**     Appeals of decisions and orders of the District Court with respect to a claim contemplated under Sections 5.1(a) and (b).

**Section 5.2 State Court.**  Each party hereby waives sovereign immunity and/or governmental immunity and consents to suit in the Circuit Court for Brown County, Wisconsin, (the "Circuit Court") but only in the event that such claim is first brought before the District Court and the District Court determines that it does not possess or will not accept jurisdiction over the claim for the following purposes:

**a.**     Claims by a party for declaratory and/or injunctive relief and the distribution of the Escrow Amount with respect to i) the Village's contention that it possesses authority to impose the SWMUO Charges; ii) the Village's contention that it may lawfully condition the issuance of the Liquor Licenses to OGEC on the payment of the SWMUO Charges.

**b.**     Claims by a party for enforcement of all other terms of this Agreement.

**c.**     Appeals of decisions and orders of the Circuit Court with respect to a claim contemplated under Sections 5.2(a) and (b).

**Section 5.3 Exhaustion of Remedies.**  The Tribe waives any requirement of the exhaustion of tribal remedies, and the Village waives any requirement of the exhaustion of remedies provided for in village ordinances or state law, including any requirement of the filing of a notice of claim under the Wisconsin Statutes.  To the extent a notice of claim may nonetheless be deemed necessary, the Village agrees that this Agreement constitutes sufficient notice of claim for purposes of the Wisconsin Statutes.

**Section 5.4 Escrow Agent Not to be Named as Party.**  The Tribe and the Village agree to refrain from naming the Escrow Agent as a party to any suit contemplated under this Article.

**Section 5.5 Limitations and Condition Precedent.**  Except as expressly provided in Sections 5.1 and 5.2, nothing in this Agreement is intended as or constitutes a waiver of the sovereign immunity or the governmental immunity of either party.  In addition, the Tribe's waiver of sovereign immunity provided for in Sections 5.1 and 5.2 shall only be effective upon issuance of the Liquor Licenses by the Village Clerk as contemplated in Article 2 above.

## ARTICLE 6 - ESCROW AGENT

**Section 6.1 Limitation of Liability**.

**a.**     The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it except to the extent that a final adjudication of a court of competent jurisdiction

5

determines the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to the Tribe or the Village. The Tribe and the Village agree, jointly and severally, to indemnify, defend and save harmless the Escrow Agent, its affiliates and their respective successors, assigns, managers, attorneys, accountants, experts, officers, directors, employees and agents from and against all losses, charges, penalties, judgments, settlements, proceedings, litigation, investigations, claims, demands, actions, suits, liabilities or other proceedings by whomsoever made, prosecuted or brought and from all losses, costs, damages and expenses (including without limitation, the legal and advisory expenses and fees of outside counsel and experts and their staffs) in any manner based upon, occasioned by or attributable to any act of the Escrow Agent in the execution of its duties hereunder. It is understood and agreed that this indemnification shall survive the termination of this Agreement or resignation or removal of the Escrow Agent hereunder. The Tribe and the Village hereby agree to jointly and severally indemnify the Escrow Agent from and against all reasonable costs, liabilities and expenses incurred by it or to which it becomes subject as a result of performing its obligations in accordance with any written direction provided by the Tribe and/or the Village pursuant to this Agreement. The Escrow Agent shall have no duties and responsibilities except as expressly provided in this Agreement.

b.    The Escrow Agent acts hereunder as a depositary only and may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties without inquiry and without requiring substantiating evidence of any kind. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request.

c.    Except as expressly provided in this Section, nothing in this Escrow Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent, the Tribe and the Village any legal or equitable right, remedy, interest or claim under or in respect to this Agreement or the Escrow Amount.

**Section 6.2 Remuneration and Expenses.** The Tribe and the Village agree jointly and severally to (i) pay the Escrow Agent for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 1 attached hereto, and (ii) pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the performance of this Agreement.

**Section 6.3 Resignation and Replacement.**

a.    The Escrow Agent may resign and be discharged from all further duties and liabilities hereunder after giving not less than thirty (30) calendar days' notice in writing to the

6

Tribe and the Village. The Tribe and the Village may remove the Escrow Agent and appoint a replacement Escrow Agent upon ten (10) calendar days' notice to the Escrow Agent. In the event the Escrow Agent resigns, is removed, or is otherwise incapable of acting, the Tribe and the Village shall appoint in writing a successor Escrow Agent. The Escrow Agent's sole responsibility after such ten (10) day notice period expires shall be to hold the Escrow Amount (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate.

b.    Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

c.    On any new appointment, and upon payment to the Escrow Agent vacating office of any amounts owing to it hereunder, the Escrow Agent shall transfer to the new escrow agent all the Escrow Fund and the new escrow agent shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named as Escrow Agent without any further assurance, conveyance, act or deed.

**Section 6.4 Advice.** The Escrow Agent may consult with counsel, accountants and other skilled persons to be selected and retained by it and employ such assistance as in its judgment, acting and relying reasonably, may be necessary for the proper discharge of its duties and the determination of its rights hereunder and may act and rely upon the opinion, information or advice of such counsel or any other independent expert or advisor retained by it. Except as provided in Section 6.1, the Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons and may act on and rely as to the truth of the statements and the accuracy of the opinions expressed therein upon statutory declarations, opinions, reports, certificates, notices, statements, directions, instructions, requests, waivers, consents, receipts or other evidence or documents furnished (each, a "Document") to the Escrow Agent including, without limitation, by the Tribe and/or the Village, without further authorization or independent verification being necessary, not only as to the due execution and validity and effectiveness of its provisions but also as to the truth and accuracy of any information contained therein which it believes to be genuine. The Escrow Agent shall not be responsible for any loss resulting from any action or inaction taken in reliance upon such opinion, information, advice or Document.

**Section 6.5 Disagreement.** In the event of any disagreement arising regarding the terms of this Agreement, the Escrow Agent shall be entitled, at its option, to refuse to comply with any or all demands whatsoever until the dispute is settled either by agreement in writing between the various parties by a court of competent jurisdiction evidenced by a final non-appealable order.

7

The Tribe and the Village agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

**Section 6.6 Books and Records**. Escrow Agent shall maintain accurate books, records and accounts of the transactions effected or controlled by the Escrow Agent hereunder and the receipt, investment, reinvestment and distribution of the Escrow Amount, and shall provide to the Tribe and the Village records and statements upon request. The Escrow Agent shall have no duties or responsibilities except as expressly provided in this Agreement. Notwithstanding the above, the Escrow Agent shall provide a monthly statement of the Escrow Funds to the Village and the Tribe.

**Section 6.7 Compliance with Court Orders.** In the event the Escrow Amount, or any part thereof, shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Escrow Amount, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

**Section 6.8 Acceptance of Obligations.** The Escrow Agent hereby accepts the covenants and obligations of this Agreement and agrees to perform the same upon the terms and conditions herein set forth and to hold and exercise the rights, privileges and benefits conferred upon it hereby for and on behalf of the persons having an interest in the Escrow Amount.

**Section 6.9 Patriot Act Disclosure/Taxpayer Identification Numbers/Tax Reporting**.

a.      Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, the Tribe and the Village acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Tribe's and the Village's identity including without limitation name, address and organizational documents ("identifying information"). The Tribe and the Village agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of

8

opening an account with or using any service provided by the Escrow Agent.

b.     The Tribe and the Village have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation. The Tribe and the Village each represent that its correct TIN assigned by the Internal Revenue Service (" IRS") or any other taxing authority, is set forth in the delivered forms.

## ARTICLE 7 - GENERAL

**Section 7.1 Governing Law.** It is the intention of the parties that the laws of the State of Wisconsin shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties under this Agreement.

**Section 7.2 Notices.** Any notice provided for or permitted under this Agreement will be deemed to have been given by a party when:

a.     delivered personally to the designated representatives of the other party and the Escrow Agent,

b.     sent by overnight commercial courier, with written verification of receipt, to the designated representatives of the other party and the Escrow Agent, at the addresses set forth below, or

c.     mailed postage pre-paid by certified or registered mail, return receipt requested, to the designated representatives of the other party and the Escrow Agent, at the addresses set forth below.

Designated representatives of the Village:

      Village of Hobart
      Attn: Clerk/Treasurer
      2990 South Pine Tree Road
      Hobart, WI 54115

      With a copy to:

      Davis & Kuelthau, S.C.
      Attn: William S. Woodward
      318 S. Washington St., Suite 300
      Green Bay, WI 54301
      Fax: (920)431-2262

9

Designated representatives of the Tribe:

> Richard G. Hill, Chairman
> Oneida Tribe of Indians of Wisconsin
> P.O. Box 365
> Oneida, WI 54155

> with a copy to:

> James R. Bittorf
> Rebecca M. Webster
> Oneida Law Office
> P.O. Box 109
> Oneida, WI 54155
> Fax: (920) 869-4065

Designated representative of the Escrow Agent:

> Associated Trust Company, NA
> Attn: Molly Carlson
> 200 N. Adams Street
> Green Bay, WI 54301
> Fax: (920) 433-3191

Notwithstanding the foregoing, in the case of communications delivered to the Escrow Agent, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate.

A party may by notice given in accordance with this Section designate additional or different representatives for the receipt of notices.

**Section 7.3 Binding upon Successors and Assigns.** Subject to, and unless otherwise provided in this Agreement, each and all of the covenants, terms, provisions and agreements contained herein shall be binding upon and inure to the benefit of, the permitted successors, executors, heirs, representatives, administrators and assigns of the parties.

**Section 7.4 Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument. This Agreement shall be binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as signatories.

10

All signatures of the parties to this Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

**Section 7.5 Entire Agreement.** This Agreement constitutes the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements or understandings, inducements or conditions, expressed or implied, written or oral, between the parties with respect to the subject matter hereof. The expressed terms hereof control and supersede any course of performance or usage of the trade inconsistent of any of the terms hereof.

**Section 7.6 Waivers, Amendment and Assignment.** The provisions of this Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing approved by the Escrow Agent, the Tribe and the Village, and executed by the authorized representatives of the Escrow Agent, the Tribe and the Village; provided, however, that if the Escrow Agent does not agree to an amendment agreed to by both the Tribe and the Village, the Tribe and the Village shall appoint a successor Escrow Agent. Neither this Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent, the Tribe or the Village, except as provided in Section 7.3, without the prior consent of the Escrow Agent and the parties.

**Section 7.7 Reasonable Efforts.** Each of the parties agrees to use all reasonable efforts to take, or cause to be taken, all action in order to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement. No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

**Section 7.8 Matters Not Addressed.** The previous owner of the Golf Course filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, and during the pendency of the bankruptcy proceedings the previous owner failed to pay personal property taxes (the "Personal Property Taxes") with respect to personal property associated with the Golf Course. This Agreement does not address the Personal Property Taxes and does not preclude the Village from pursuing remedies it believes it possesses with respect to the Personal Property Taxes.

**Section 7.9 Description of Disputes.** This Agreement is intended to describe in general terms disputes existing between the Village and the Tribe with respect to the SWMUO Charges and the issuance of Liquor Licenses to OGEC. This Agreement does not signify or constitute either party's concurrence in any particular legal theory or factual determination.

11

**IN WITNESS WHEREOF** the Parties have executed this Agreement as of the date first above written.

**VILLAGE OF HOBART**

Richard Heidel, President

**ONEIDA TRIBE OF INDIANS OF WISCONSIN**

Richard G. Hill, Chairman

**ONEIDA GOLF ENTERPRISE CORPORATION**

Barbara Webster, President

**ASSOCIATED TRUST COMPANY, NA**

Molly Carlson, Vice President

12

Schedule 1

Amounts received will be invested in to the Goldman Sachs Prime Obligations Money Market Fund (ticker FBAXX)

A $1500 annual fee will be invoiced for the Escrow Agent's fees. There is a $750 minimum fee and if the account is distributed prior to the first year the fees will be prorated after the $750 minimum is surpassed.

# Exhibit D



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Midwest Regional Office
Bishop Henry Whipple Federal Building
One Federal Drive Room 550
Ft. Snelling, MN 55111

MAR 24 2009

IN REPLY REFER TO:
Real Estate Services
Division of Fee to Trust



RECEIVED BY BC
ADMINISTRATIVE OFFICE

MAR 27 2009

ONEIDA TRIBE OF
INDIANS OF WISCONSIN

INITIALS

RECEIVED
MAR 27 2009
TRIBAL CHAIR'S OFFICE

Certified Mail – Return Receipt Requested – 7003 2260 0000 4376 9377

Mr. Richard Heidel
President
Village of Hobart
Hobart Village Offices
2990 S. Pine Tree Rd,
Hobart, WI

Certified Mail – Return Receipt Requested – 7003 2260 0000 4376 9384

Mr. Guy Zima
Chairman
Brown County Board Of Supervisors
PO Box 23600
Green Bay, WI 54301

Dear President Heidel and Chairman Zima:

We are in receipt of a request for assistance from the Oneida Tribe of Indians of Wisconsin with regard to a Storm Water Management charge being imposed on lands owned by the United States of America in Trust for the Oneida Tribe by the Village of Hobart, the subject of this letter.

The charge shows up in the 2007 Brown County tax statements for the trust properties as "STORM WTR MGMT" under "Net Property Tax and Total Specials". We are also aware that a "Notice of Issuance of Tax Certificate for Tax Roll of 2007" was issued for these trust properties.

The County presents no issue with regard as to land held in trust by the United States for the Tribe is not subject to state and local taxation, yet seeks to avoid that prohibition by characterizing the tax as a fee for services.

In Chase vs. McMasters, 573 F2d 1011 (8th Cir. 1978), Cert. Denied, 439 U.S. 965 (1978), the court held that any attempt by the City to tax trust property was barred by the Supremacy Clause of the United States Constitution because it interfered with the Indian owner's right to enjoy the beneficial use of the land held in trust without obligation to pay taxes and therefore interfered with the operation of an important means

of implementing a policy held by the Federal government to meet its trust obligations to Indians. Chase also provides, "When Congress provided in § 465 for the legal condition in which land acquired for Indians would be held, it doubtless intended and understood that the Indians for whom the land was acquired would be able to use the land free from state or local regulation or interference as well as free from taxation".

Additionally, an assessment is a tax rather than a "fee" when it is levied to generate revenues to support general public purposes rather than as reimbursement for actual services provided to users. Nation Cable Television Ass'n, Inc. v. United States, 415 US 336 (1974), and City of Cincinnati v. United States, 39 Fed. C1. 271 (1997,) which explain the legal criteria distinguishing a tax from a service fee and the prohibition against taxation of federal property. The Village of Hobart ordinance is clear in that the assessment in this case is for the general purpose of defraying storm water management costs.

Also, Id., at 1018, the Departmental regulations specifically prohibit state and local regulation of trust property. 25 Code of Federal Regulations provides:

(a) Except as provided in paragraph (b) of this section, none of the laws ordinances, codes, resolutions, rules or other regulations of any State or political subdivision thereof limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property leased from or held or used under agreement with and belonging to any Indian or Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States.

In conclusion, the Storm Water Management charge is clearly a tax that may not be imposed on land held in trust by the United States, as lands held in trust by the United States may not be sold for taxes in the absence of its consent. United States v. Alabama, 313 U.S. 274 (1941); United States v. Michigan, 429 F. Supp. 8 (E.D. Mich. 1977).

Please take immediate action to delete this property from the tax certificate list and terminate further collection action.

Further correspondence regarding this matter may be directed to me at the address noted above.

Sincerely,

Signed/Terrance L. Virden

Regional Director

cc: Richard Hill, Chairman, Oneida Tribe of Indians of Wisconsin
    Superintendent, Great Lakes Agency (Attn: Real Estate Services)