UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ONEIDA TRIBE OF INDIANS
OF WISCONSIN,

        Plaintiff,

v.                                   Case No. 10-C-137

VILLAGE OF HOBART,

        Defendant.

**DECISION AND ORDER**

In this action, Plaintiff Oneida Tribe of Indians of Wisconsin seeks declaratory and injunctive relief precluding the Village of Hobart from assessing a utility fee for land in the Village owned by the United States and held in trust for the Tribe. The Village filed a third-party complaint against the United States, including the United States Department of Interior and its Secretary Kenneth Salazar, in which it alleges that the Clean Water Act requires the United States to pay the Village's storm water fees to the extent the Oneida are not liable for such fees. The complaint also argues that a federal regulation exempting tribal trust land from property laws is illegal under the Administrative Procedure Act (APA) and provisions of the Constitution. Presently before me is the motion to dismiss filed by the United States in which the government argues that the Village's claims are barred by sovereign immunity. The Government further argues that any claims under the APA are not ripe because the Village has not appealed the decision of a Bureau of Indian Affairs official that it now challenges. For the reasons given below, the motion to dismiss will be granted.

In 2007 the Village of Hobart began enforcing a village ordinance that imposes a storm water run-off fee on property located within the Village. The Village states that it was forced by federal law to charge such fees in an effort to abate pollution. Within the Village, the United States owns roughly 1420 acres of land, which it holds in trust for the Tribe. The Village ordinance applies to both the Tribe's trust land as well as the land the Tribe owned in fee. The Tribe contested these charges but ultimately paid the money it was charged for its trust land into an escrow account subject to further proceedings to determine the legitimacy of the water charges. (Charges for the Tribe's fee land are not at issue here.) The Tribe applied to the Bureau of Indian Affairs for relief, and the regional director agreed with the Tribe. He deemed the fee an improper tax, directed the Village to remove the Tribe's trust property from the tax certificate list, and ordered the Village to cease any efforts to collect the fee. (Compl., Ex. D.) In its third-party complaint, the Village asserts that the government is liable for any fees for which the Tribe is not liable. It also seeks review of the BIA's determination that the storm water fees levied on tribal trust land are an improper tax.

**I. Section 313 of the Clean Water Act**

The Village's third-party complaint alleges that if the Tribe is not liable for payment of the fees, then the United States is. Citing § 313 of the Clean Water Act, 33 U.S.C. § 1323(a), the Village argues that the federal government is subject to all local water quality regulations, including service charges. It further argues that § 313 provides a waiver of the government's sovereign immunity. Section 313 provides as follows:

> (a) Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all

2

> Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. <u>This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law</u>.

33 U.S.C. § 1323(a) (emphasis added).

In a nutshell, the statute provides that if an agency of the federal government is engaged in discharge of pollutants, or if it owns a property, it must comply with all local and state laws and regulations involving abatement of water pollution. This includes "the payment of reasonable service charges." *Id.* Section 1323(a) requires federal agencies to comply with state and local water-quality requirements "in the same manner, and to the same extent as any nongovernmental entity." "Congress intended this section to ensure that federal agencies were required to 'meet all [water pollution] control requirements as if they were private citizens.'" *Center For Native Ecosystems v. Cables,* 509 F.3d 1310, 1332 (10th Cir. 2007) (citation omitted).

The United States argues, however, that the Village has no authority to impose fees on tribal trust land, and thus § 313 and its waiver of sovereign immunity do not apply. The government concedes that § 313 allows recovery of service charges, but it argues such charges must have been validly imposed by the Village before the United States must pay them. Because the Village has no authority to impose fees on trust land, the government argues that it has not waived its sovereign immunity under § 313.

3

The Village protests that the government is using circular logic: after all, the question of the Village's authority to impose fees on tribal land is the crux of its case, so the government's immunity argument begs the question. That is, in the Village's view, the government has jumped to an argument on the *merits* of the case – whether the Village had authority to impose the fees – rather than asserting any basis for sovereign immunity. The Village is correct that the government's immunity argument (if that is what it is) is really an argument on the merits. In essence, the government is saying it is immune because the Village would lose its lawsuit if this Court were to consider the merits. But that, of course, is not what sovereign immunity provides. Immunity would preclude this Court from even reaching the merits because the government would not be a suable entity. The question is whether the waiver of immunity found in § 313 would apply here. But because the government merely argues that the Village's § 313 claim is a loser on the merits – not that § 313 is inapplicable – it appears that the government has conceded that § 313 would apply to the Village's claim.

In fact, it appears that § 313 is applicable here. Because the United States is not a discharger of pollutants on the trust land, I must assume that the Village is relying on subsection (1), which governs federal agencies "having jurisdiction over any property or facility." 33 U.S.C. § 1323(a)(1). The federal government does have jurisdiction over the property at issue here, which is land owned by the government and held in trust for the Tribe. The text of § 313 governs the dispute because the Department of the Interior is an agency of the federal government having jurisdiction over the property, and thus § 313 makes it subject to local requirements "respecting the control and abatement of water pollution . . . including the payment of reasonable service charges." 33 U.S.C. § 1323(a). Accordingly, because the Village is attempting to obtain payment of service charges

4

from the government for property in the government's jurisdiction, § 313 and its waiver of immunity apply. I am thus unable to conclude that the government is immune from suit.

But the fact that the government may have waived immunity for alleged violations of § 313 does not end matters. The government also argues that § 313 creates no independent cause of action. Instead, it asserts that parties seeking relief must rely on the APA.

The Clean Water Act itself contains a citizen suit provision. That clause provides that suits may be brought:

> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (2) against the [EPA] Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a).

The Village does not argue that either of the above subsections is implicated here. In fact, it does not explain its argument that § 313 of the CWA authorizes an independent cause of action at all. This is perhaps not surprising, as cases support the government's position that the APA is the only way for a plaintiff to bring a claim for a § 313 violation when the CWA's citizen suit provision is inapplicable. For example, in *Center for Native Ecosystems v. Cables,* the plaintiff alleged that the U.S. Forest Service was violating Wyoming water quality regulations, in violation of § 313 of the CWA. 509 F.3d 1310,1332 (10th Cir. 2007). The claim was brought, and considered, under the APA. *Id.* at 1328 ("The APA, under which CNE's CWA claim is brought . . . limits judicial review not otherwise provided by statute to 'final agency action for which there is

no other adequate remedy in a court.'") The same was true in *Swanson v. U.S. Forest Service,* 87 F.3d 339, 345 (9th Cir. 1996), where the court found that the "Administrative Procedure Act [is] the statute which would entitle [plaintiff] to relief from the government's alleged violation of state water quality standards." *See also Hells Canyon Preservation Council v. Haines,* 2006 WL 2252554, *1 (D.Or. 2006) ("Plaintiffs' claims under . . . § 313 of the CWA are also governed by the APA."); *City of Shoreacres v. Waterworth,* 332 F. Supp.2d 992, 1004 (S.D. Tex. 2004) ("Because neither NEPA nor the CWA provide an independent right of action, Plaintiffs' claims for review under NEPA and the CWA fall under the Administrative Procedure Act.")

The Village has not explained how its CWA claim against the United States would be reviewable under the APA. The United States itself has not taken any final action with respect to the Village's demand that the government pay the fees assessed by the Village for tribal land. It was the *Tribe* that refused to pay the fee, not the United States. The Village asserts, briefly, that the Tribe's failure to pay the fees should be imputed to the United States because the Tribe, in refusing to pay, cited the Department of Interior's opinion that the fees constituted an impermissible tax. But that opinion merely addressed the viability of the fee relative to the Tribe itself; no one ever suggested to the BIA that the federal government should pick up the tab itself. The Village has not cited any authority that would allow this court to review a non-government party's actions under the APA standard for arbitrary and capricious conduct (discussed below). Nor has it provided any reason to believe that review of the Tribe's actions (even if "imputed" to the United States) would be appropriate under the APA. In sum, the question of whether the government should be liable under § 313 for payment of the Village's storm water fees has never been presented to any federal

6

agency. Accordingly, I can find no basis upon which the APA would grant the Village relief under these circumstances.

**II. APA Review of the BIA's Decision that the Fees are an Improper Tax**

The Village also challenges the BIA's conclusion that its storm water fees constitute an improper tax. The APA waives the government's sovereign immunity for review of some administrative decisions. Unless the action is made reviewable by statute (not applicable here), however, the challenged action must constitute a "final agency action" before it is subject to judicial review under the APA. 5 U.S.C. § 704. If the agency action is final and thus reviewable, a court may only overturn it if it finds the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The United States argues that the APA does not apply here because there has been no "final agency action" to speak of. In *Bennett v. Spear,* the Supreme Court explained:

> As a general matter, two conditions must be satisfied for agency action to be considered "final": First, the action must mark the consummation of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

520 U.S. 154, 177-78 (1997).

The Village points to the letter sent by BIA Regional Director Terrance Virdan in which he deemed the storm water fee an improper tax and directed the Village to cease any efforts to collect the fee. (Compl., Ex. D.) The Village argues this was a final agency action because it was a definitive statement as to the validity of the storm water fees and the BIA expected immediate compliance with it.

The United States argues, however, that the Village failed to take advantage of administrative procedures to appeal the decision, and thus the decision of the regional director was not "final" for purposes of the APA. Applicable BIA regulations provide that "No decision . . . shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704, unless . . . the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately." 25 C.F.R. § 2.6(a). Similarly, 43 C.F.R. § 4.314(a) provides that decisions of a BIA official are not final unless the Interior Board of Indian Appeals makes the decision effective pending a decision on appeal. Neither of these conditions for finality has been satisfied.

> The federal regulations provide that administrative procedures must be followed before seeking relief in the court system. 25 C.F.R. § 2.6. There are clearly detailed administrative processes and remedies set forth in 25 C.F.R. Part 2 and 43 C.F.R. Part 4. Appellants, however, did not initiate even the first steps of the administrative appeal process. Instead, they asserted their claims for the first time in federal court.

*Klaudt v. United States Dept. of Interior,* 990 F.2d 409, 411 (8th Cir. 1993).

The Village's claim that the agency's action is final rests on nothing more than its own say-so. The purpose of the agencies' various exhaustion requirements is not to create an officious and burdensome bureaucracy, it is to allow the agency to direct its expertise at fully developing a record and solving regulatory problems after full consideration. *Id.* at 412. The Supreme Court has held that when the APA applies, appeal to "superior agency authority" is a prerequisite to judicial review when an agency rule requires appeal before review and the administrative action is made inoperative pending that review. *Darby v. Cisneros,* 509 U.S. 137, 154 (1993). Here, the regulations cited by the government explicitly state that agency action is *not* final for APA purposes unless the decision has been deemed final by the agency. The regulations further provide that any appeal may be taken

8

to the Interior Board of Indian Appeals (IBIA). 25 C.F.R. § 2.4(e). *See, e.g., Miami Tribe of Oklahoma v. United States,* 2008 WL 2906095, *5 (D. Kan. 2008) ("Applying these regulations, the Court finds that the October 23, 2007 decision of the Regional Director of the BIA is subject to appeal to the IBIA and has not been made effective pending a decision on appeal. As such, the decision is not yet a final agency action for purposes of APA review under 5 U.S.C. § 704.")

The Village suggests that appeal through the administrative process would be "futile" because it is clear what the government's position is. But the futility exception to the exhaustion requirement is not an open-ended invitation for disgruntled plaintiffs to put words in the mouths of federal agencies whose ultimate opinions have not yet been sought. The fact that a BIA regional director issued an opinion that the government is now defending in this litigation does not excuse the Village's failure to exhaust. Futility does not mean an administrative challenge is likely to lose, it means the challenge would be pointless. Presumably, the BIA created an appeals process not because it has nothing better to do, but because it serves a meaningful function. *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 536 (7th Cir. 1999) ("As for the possibility that administrative remedies could be declared futile ex ante, without ever being tried: what would be the point of asking judges to be seers? . . . No one can know whether administrative requests will be futile; the only way to find out is to try.")

Accordingly, I conclude that the letter of the BIA regional director does not constitute a final agency action subject to review under the Administrative Procedure Act. And because there is no final agency action, the Village's "as applied" constitutional challenge to 25 C.F.R. § 1.4 is not yet ripe either. That is, absent any final action "applying" the regulation to the Village, the claim fails.

**III. Conclusion**

For the reasons given above, I conclude that the APA provides the only avenue for review of the issues presented in the Village of Hobart's third-party complaint. Because there is no "final agency action" to review, however, the APA does not provide a cause of action. Accordingly, the motion to dismiss the third-party complaint is **GRANTED**.

**SO ORDERED** this   18th   day of April, 2011.

                                             s/ William C. Griesbach
                                             William C. Griesbach
                                             United States District Judge