UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ONEIDA TRIBE OF INDIANS OF WISCONSIN,

                Plaintiff,

    v.

VILLAGE OF HOBART, WISCONSIN,         Case No. 10-CV-137

                Defendant/Third-Party Plaintiff,

    v.

UNITED STATES OF AMERICA, et al.,

                Third-Party Defendants.

---

## ORDER DENYING MOTION FOR CONTEMPT

---

This matter is before the Court on the motion of the Plaintiff Oneida Tribe of Indians of Wisconsin (the Tribe) requesting that Defendant Village of Hobart, Wisconsin (the Village) be held in contempt for failing to comply with the judgment entered by the Court more then three years ago. The Village denies that it is in contempt, but has alternatively filed its own motion to amend or correct the stipulation of facts and/or the judgment upon which the Tribe's motion is predicated. For the reasons that follow, both motions will be denied.

### BACKGROUND

The Tribe filed this action against the Village seeking a declaration that land held in trust for the Tribe by the United States was not subject to charges imposed under the Village's Stormwater Management Utility Ordinance that was enacted in conformity with the Clean Water Act. *See* 33 U.S.C. § 1251(a); 40 C.F.R. § 122.34(a). The Tribe also sought an injunction against any attempt

by the Village to impose and collect such charges against the Tribe's trust lands. Specifically, the Tribe's first claim for relief sought a declaration that the charges imposed by the ordinance constitute impermissible "taxes" on the subject trust lands. The Village argued the charges were not "taxes" but "fees," and thus the subject lands were not immune.

The parties stipulated to the background facts—including that there were 148 parcels of trust land at issue in the case (*see* ECF No. 50, ¶ 4)—and then sought a determination via a motion for summary judgment. The Court concluded that the charges were "taxes" and, because tribal lands cannot be taxed by the state or municipality wherein they are located, granted summary judgment in the Tribe's favor. Judgment was entered to that effect and the Village was enjoined "from attempting to impose and collect 'charges' under the Ordinance from the Tribe or from foreclosing on the Tribe's lands." (ECF No. 69.) The judgment was entered on September 5, 2012, and it was affirmed by the Seventh Circuit a little over a year later. The Village thereafter petitioned the United States Supreme Court for certiorari review, but its petition was denied on May 27, 2014.

On October 21, 2014, the Village adopted a resolution cancelling the assessments made under the Stormwater Ordinance on the Tribe's trust property. However, the resolution excluded 42 of the 148 parcels that the Tribe claimed were held in trust in the affidavit filed in support of its motion for summary judgment. Aff. of Rebecca M. Webster (ECF No. 49) ¶ 5, Ex. A. Although the Village had previously stipulated to the fact that the United States held 148 parcels of land within the Village boundaries in trust for the Tribe, the Village now took the position that it did not have the documentation needed to verify that forty-two of the parcels claimed by the Tribe were in fact held in trust. The Village's doubts over the Tribe's claims arose as a result of the responses by the Secretary of the Department of the Interior (DOI) to a series of Freedom of Information Act (FOIA)

2

requests the Village had made in an effort to verify those claims.

What the Village learned from the Secretary's responses to its FOIA requests was that the DOI did not acknowledge any interest in twenty of the forty-two parcels the Village had questioned. These twenty parcels were comprised of land over which the Green Bay and Lake Pepin Railway Company (GB & LP) had been granted a right-of-way by Congress on March 3, 1871. In the early 1890s the Oneida Reservation was almost entirely allotted to individual tribal members pursuant to the General Allotment Act and taken out of trust. The Tribe takes the position that the lands over which the railroad was granted a right of way was not allotted and thus never left trust status. In 2001, the Fox Valley & Western Ltd. Railroad (FVW), which had succeeded to the GB & LP's interest in the right-of-way, abandoned it. The Tribe thereafter entered into a "Mutual Release Agreement" with FVW that acknowledged the railroad received an easement, that the railroad never received fee title to the right-of-way land, and that the title remains in trust for the Tribe.

Since at least August 13, 2001, and continuing thereafter up to the present time, the Tribe has been seeking a determination by the DOI that the railroad parcels were never allotted and have remained in trust for the Tribe. To this day, however, it has failed to obtain such a determination. The reason for the DOI's reluctance to issue such a determination appears to be because none of the patents granted to tribal members for the land over which the railroad right-of-way extended contain language excluding it. Absent language in the patent excluding the portion of the land on which the right-of-way was located, it would seem to follow that the land was in fact allotted and thereby removed from trust. If that is the case, then it would remain subject to village taxes and assessments.

On October 18, 2007, notwithstanding the absence of any determination by the DOI that the railroad parcels remained in trust and apparently without the knowledge of the DOI, the Tribe

3

recorded with the Brown County Register of Deeds a document entitled "Affidavit of Easement Cancellation." Aff. of Frank W. Kowalkowski (ECF No. 90) ¶ 9, Ex. 21. The Affidavit lists the railroad parcels and instructs the Register of Deeds to update the Tract Index "to reflect the accurate title to this property as: United Stated [sic] of America in Trust for the Oneida Tribe of Indians of Wisconsin." *Id.* The Index was changed and now lists the United States of America as title owner for each of the railroad parcels.

It was in reliance on this record that the Village initially elected not to challenge the Tribe's claim that each of the railroad parcels was trust property. When it became aware through the DOI's responses to its FOIA requests that DOI had made no determination that the railroad property was in trust despite the Tribe's efforts for over a decade, the Village refused to cancel its stormwater charges. As to the twenty-two other parcels, the Tribe provided the requested documentation and those charges have now been cancelled. Nevertheless, the Tribe contends that the Village is in contempt for not cancelling them earlier and for not cancelling the charges on the remaining railroad parcels. It seeks an order compelling the Village to cancel the remaining charges and attorneys fees.

## DISCUSSION

"Civil contempt proceedings are part of the action from which they stem, and their purpose, of course, is to secure compliance with a prior court order. A district court has considerable latitude in how it goes about enforcing its own decrees in a contempt proceeding." *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.*, 91 F.3d 914, 920 (7th Cir. 1996) (internal citation omitted). "To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor

4

did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

For several reasons, I find no clear and convincing evidence of contempt here. First, the judgment in this case resolved a legal dispute about whether the Village's stormwater management ordinance could be applied to tribal trust lands. The case was neither pleaded by the Tribe, nor perceived by either the Village or the Court, as a vehicle for resolving the question of title to disputed property. The Court was not asked to decide which parcels were held in trust, and although the Village stipulated to the number of parcels, it did not agree that each of the parcels identified by the Tribe was in fact trust property. For the narrow legal issue presented, that degree of specificity was not needed; it was enough that the Tribe had property in trust that the Village was trying to tax.

This fact is also reflected in the order and judgment entered by the Court. The judgment declared generally that "the Oneida Tribe of Indians of Wisconsin's trust land is immune from the Village of Hobart, Wisconsin's Storm Water Management Utility Ordinance and that the Village lacks authority to impose charges under the Ordinance on the Tribe's land directly or indirectly" and enjoined the Village "from attempting to impose and collect 'charges' under the Ordinance from the Tribe or from foreclosing on the Tribe's lands." (ECF No. 69.) There is no mention of the specific parcels of land that were immune and on which the Village was enjoined from imposing or collecting charges. Absent such specificity, I cannot find that the Village disobeyed an unambiguous command. *See Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989) ("To hold a party in contempt, the district court must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated.").

5

Even if the judgment had expressly incorporated the list of parcels the Tribe claimed were in trust, I would not find the Village in contempt for failing to cancel the charges on all 148 parcels in light of the Tribe's failure to disclose to the Village and the Court its unsuccessful efforts to obtain a DOI determination of its claim of trust ownership of the railroad parcels. The Village reasonably relied on the records maintained by the Brown County Register of Deeds which showed the railroad parcels held in trust by the United States. Prior to the DOI's response to its FOIA requests, the Village had no reason to suspect that the United States did not agree with the Tribe's claim of trust ownership. It would be manifestly unfair to hold that by failing to object the Village had waived its right to challenge the Tribe's claim that the property was held in trust. And given the response to its FOIA requests, the Village also acted reasonably in requesting further documentation for other parcels with respect to which its documentation was lacking.

Lastly, I note that the Village has taken no action during the pendency of this matter to collect the charges imposed on any of the disputed property during the pendency of this action. In other words, the Tribe has suffered no damage as a result of the Village's failure to remove the charges before it could verify the trust status of the parcels in question. Under these circumstances, I conclude that the Tribe's motion to find the Village in contempt must be denied. The Village's alternative motion to amend the stipulation and/or judgment is also denied.

**SO ORDERED** at Green Bay, Wisconsin this __16th__ day of November, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

6